We'll hear argument next in Case 14-7505, Hurst v. Florida. Mr. Waxman. Mr. Chief Justice, and may it please the Court, under Florida law, Timothy Hurst will go to his death despite the fact that a judge, not a jury, made the factual finding that rendered him eligible for death. That violates the Sixth Amendment under Ring. In Florida, and Florida alone, what authorizes imposition of the death penalty is a finding of fact by the court of an aggravating factor, a finding that the trial judge makes independently and, quote, notwithstanding the jury's recommendation as to sentence. Now, the State here contends that capital sentencing juries make implicit findings that satisfy the Sixth Amendment under Ring, which the trial judge then simply ratifies. That is wrong. Whatever the jury's recommendation might imply about the specified aggravating factors, the Florida Supreme Court has repeatedly rejected the notion that the jury's recommendation, rather than advisory, Florida law entrusts the factual findings of aggravators to the judge alone who may do so on the basis of evidence that the jury never heard and aggravators that the jury was never presented with. Scalia. Is there ever a case in which the jury found aggravators and recommended the death sentence and the judge reversed that finding? There may well be. This is principally a case about the finding of death eligibility, not sentence selection. I mean, either way, is there ever a case in which the jury did not find an aggravating circumstance, but the judge did? Well, we don't ever know what the jury found about any of the specified aggravating circumstances. The only thing that the jury tells the judge is, we recommend life-slash-death by a vote of X versus 5. They can't recommend death unless they find the aggravator, right? Well, no. No. As a matter of State law, that's not correct. They can't recommend death unless seven of them each believe that some aggravator is satisfied. All right. But the Florida Supreme Court, and this is a — this is another ring problem here. The Florida Supreme Court has recognized that where two aggravators are presented, it is impossible to know, even if a simple majority agreed on a single aggravator. Well, that's a common feature, though, of jury deliberations. Let's say an aggravator is whether the murder is particularly heinous, and it can be for a number of factors. One, the victim is a juvenile. So maybe three jurors find that. Or an officer was also killed. Or it was in the commission — in the course of another felony. In a typical case of finding that the murder was heinous, you have no idea whether the jury as a whole made that determination or if there were 12 different reasons. Mr. Chief Justice, Florida and — Florida is the only State, the only death-penalty State, and therefore the only State, that does not require or permit the jury to be unanimous. And in all other States, it's unanimous, but even has to — cannot even be told that a majority have to agree as to the existence of one of the specified aggravating factors. Roberts, I mean, taking it even out of the death-penalty context, that's true with every jury determination. You could have the jury determining that the, you know, the person didn't commit the offense because his alibi was good or because, you know, somebody else did it or any number of 12 different reasons that they think he was not guilty. It doesn't have to be agreement by the jury on a particular basis for their verdict. We're talking here, Mr. Chief Justice, about elements of the crime. And as this Court explained in Ring, the existence of a statutory aggravating factor is an element of a death-eligible crime. And can anybody imagine a world, which would be the analog in Florida, if the jury at the guilt-innocence phase of any trial, a shoplifting trial, were told, now look, I'm the one who will decide whether the defendant is or isn't guilty as a matter of law and eligible for punishment, but I'd like your input on what you — whether you think each of the specified elements is or isn't satisfied? I mean, that — nobody would stand for an argument like that or a system like that. Sotomayor, are you sure that if you have a crime that can be satisfied by various elements, the jury has to agree upon the specific element that satisfies it? If they are distinct elements, and this implies the shad point that the State is raising, if the State, consistent with long historical tradition and a finding of equal culpability, chooses to permit a particular element in shad, it was premeditation or the mental state, to be satisfied either by premeditation or by felony murder, that's fine, but that is not the Florida system. Florida requires as a matter of law, and the Florida Supreme Court has said this over and over again, that a defendant is eligible for death only if the trial judge finds as fact, beyond a reasonable doubt, that a particular statutory aggravator exists, and I submit, even if that were not the case, extending shad, which held that in light of a 150-year history of States, including in the mental element for first-degree murder, either felony murder or premeditation, that combining those two elements didn't satisfy the death penalty. None of that is here. This is a question of the Sixth Amendment and the Eighth Amendment. No State ever has said that the jury can just decide some muddle of aggravation. They just don't agree on the specific element, and that would violate, I think, the Sixth and Eighth Amendment precedents. Scalia, I would think that the – I would think just the opposite, that the necessity of finding the elements of the crime goes all the way back into the mists of history, and this necessity of finding an aggravator, aggravating factor, we made it up, right? I mean, that's just recent Supreme Court law. So if either one of them should be satisfiable by simply finding the generic conclusion rather than agreeing upon the particular species at issue, I would think it's the latter rather than the former. Justice Scalia, I'm reminded of your separate opinion, I think it was in Walton v. Arizona, where you were choosing between two things that you didn't particularly like, and one of them was the fact that the court had made, recently or not, had made a finding of a – beyond a reasonable doubt, a factual finding of a specified aggravating factor, an element of the crime. And whether it's recent, whether the court should or shouldn't have done it, it has, and it under Ring, it is just like any other element of the crime. And on the Shad point, I think the other thing I would have said is the Florida Supreme Court, and I'll refer the Court to the Bevel case, the Florida Supreme Court has said that the 16 aggravating factors that it – that makes one eligible for death are vastly incommensurate in terms of relative levels of moral capability, opposite of the predicate of Shad. Alito, could I ask you this about Ring? I wasn't on the court at the time of Ring. So could you tell me if Ring is entitled to greater weight as a precedent than, let's say, Gregg v. Georgia and the other cases upholding the constitutionality of the death penalty? Oh, I'm not – I wouldn't be prepared to say – to assign weight to either of them. I think Ring is certainly predicated on Gregg, to Justice Scalia's point, if Gregg hadn't decided that there has to be a determinate, specific, appellate, reviewable narrowing of sentencing jury's discretion, Ring wouldn't come up because an aggravating factor wouldn't be an element. Do you think this scheme, assuming we agree with Justice Scalia, that you don't really need unanimity, would this still be good law? Under Apodaca, the case that said that a – we needed a unanimous jury, but, you know, 9 out of 12 is okay, do you think 7 out of 5 is okay? I hope it was clear from our brief that we think 7 out of 5 is not okay. It doesn't require this Court to overrule Apodaca, which – We're not required to do anything. We could just say it's not the functional equivalent. But is it still good law? Shouldn't we overrule it? We think for the reasons stated in our brief, you should overrule it, and particularly in the Eighth Amendment context where the question is death, the jury should be unanimous. I mean, there is no other State that permits anyone to be sentenced for death other than a unanimous determination by the jury, and the State of Florida requires unanimity for shoplifting, just not for death. It requires unanimity on all the other elements of the crime. Now, even Apodaca is an unusual position as a judge. Wait a minute. They require unanimity for conviction, right? Yes, and conviction – Just they don't require unanimity on the sentence. That's quite different from whether the person committed the crime or not. Justice Scalia, exactly. And, Justice Scalia, leaving aside our Eighth Amendment point in our brief that followed on Justice Breyer's concurrence in Ring, this is all about the eligibility, not the determination of what sentence applies. And you have held that the existence of a specified statutory aggravating factor is a condition, it is an element of capital murder, and it is by statute and Florida Supreme Court decision an element of capital murder in Florida. And in Apodaca itself, which, as Justice Thomas pointed out in McDonald, is an extraordinarily unusual case, even there, six justices indicated that a simple majority rule would not pass muster. I mean, we need to – once a – when an assignment is made to a jury in a case to decide beyond a reasonable doubt the existence of an element, however the State defines the element, we need substantial reliability that the jury actually performs those functions. And in this case, and again, in this case, if it were true that the sentencing jury was actually determining death eligibility, which it is plainly not, as we point out, the Eighth Amendment would certainly be violated under Caldwell, because this – Florida juries are told that they do not determine death eligibility, and the State simply can't have it both ways. Either the jury is correctly told that its role is merely advisory, in which case there is a ring violation, or the instruction that it's given violates the Eighth Amendment under Caldwell, because as in Caldwell, it misleadingly, quote, minimizes the jury's sense of responsibility for determining the appropriate death. Ginsburg. Do we just treat as irrelevant what was involved in this case, that is, the two aggravators that were alleged, the brutality of the murder and that it occurred during a robbery? Those were obvious that they existed. Is that not so? Waxman. I think it's not so. It's probably a reason why for – I mean, the heinous atrocious and cruel aggravator can never be obvious. The State isn't even arguing harmlessness with respect to that. And as to robbery, I think it's important to recognize the following. The State made a choice. They didn't even indict Timothy Hurst for robbery. The sentencing jury was not even instructed on the elements of robbery. This argument of harmlessness was never raised in these proceedings from the sentencing proceeding onward, including in the brief in opposition in this case, until the red brief. And even there, the red brief is simply arguing that there was a fatal concession. But in any event, Justice Ginsburg, there is evidence in the record from which a jury could certainly find that Timothy Hurst, although he was found guilty of first-degree murder, did not in fact actually commit the robbery. The jury was told that to find the existence of the felony murder aggravator, it had to find – and I believe this is on page 211 of the joint appendix – that it had to find that the murder was committed while he, in the course of him committing a robbery. All of the physical evidence in this case that relates to the robbery, the bank deposit slip, the money, the bank deposit envelope, and a piece of paper in Leeley Smith's handwriting toting up the proceeds were all found in Leeley Smith's possession. And so, although it is not this Court's ordinary function to determine whether something was or wasn't harmless, as in Ring, it was remanded for that purpose. I think in this case, it manifestly was not harmless. And if there were a remand or any question by this Court on that count, it ought to be remanded to the State court, not only to determine constitutional harmlessness, but whether there was a waiver by the State in its deliberate choice never to mention this, either to the second sentencing jury or thereafter. Sotomayor, am I understanding the case properly? The informant who had all of the physical evidence was the main identifier of the defendant, correct? Correct. I mean, there were – there was an eyewitness from across the street who testified that he saw somebody go into the Popeyes and he positively identified the defendant. And I believe there was another cooperator who backed up Leeley Smith's testimony. So the defendant claimed, however, that this informant was the one who did the crime. Could the jury, under the evidence that existed, conclude that they both did it? Certainly. And that's why it's debatable whether it's harmless? Yes. And in fact – Because what makes it an aggravator is if he's the one who actually did the killing. That's correct. That he wasn't – Well, that's what the jury was instructed. The jury was instructed that in order to find the felony murder aggravator, it had to find that the murder was committed in the course of him committing the robbery. Personally? Yes. All right. Now, the statute, the actual aggravator, is different, but that is what this jury was told. Mr. Waxman, can I give you a hypothetical State system? And this is a two-part question. You tell me if it is consistent with the Sixth Amendment, and if it is, what makes this case different, okay? So my system is that a jury, whether in the penalty phase or in the guilt phase, has to make a determination of an aggravating factor, okay? But once that's done, once the jury decides on an aggravating factor, the judge can do whatever she wants. The judge can add aggravating factors. The judge can re-weigh the aggravating factors as compared with the mitigating evidence. The judge can do any of that stuff, but the judge has to leave alone the aggravating factor that the jury finds. So in other words, the judge can't give death when the jury finds life, and the judge can't throw out the jury's factor. But as long as that jury makes that aggravating factor determination, the judge can do anything. Is that consistent with the Sixth Amendment? Okay. You're asking only about the Sixth Amendment and not the Eighth Amendment's point. Yes. Okay. So just to be sure that I'm specifically answering your question, if the jury is told you must find, for the defendant to be eligible for death, you must find beyond a reasonable doubt the existence of at least one of the statutory aggravating factors. And I would also say, for Sixth Amendment purposes, you must either be unanimous or the vote must be at least 10 to 2. And the jury then does so fine. And you then have the sort of belt and suspenders legal system that the State is positing that Florida has here, where the judge can say, okay, I'm the one who does the sentence, so I can weigh the ags and the mits. I can't — he is death eligible because the jury found beyond a reasonable doubt that a statutory aggravator exists. But the judge can say, nonetheless, I'm giving life. There's nothing — there's no violation of the Sixth Amendment in — when that happens. The question is, in this case, when the sentencing jury has concluded its work — I mean, and I'm assuming in a case where there's not a conviction for a prior aggravated felony — when the sentencing jury has concluded its work, is the defendant eligible for the death penalty under State law, yes or no? And in Florida, the answer is unquestionably no. Even if we knew that 12 of the jurors found the robbery aggravator here, there would be a ring violation, just as if we knew that 12 of the jurors found that he had killed the defendant in this case, but they had been told, I just want your input on this because I, the judge, will decide. Kagan. Is that what makes a difference, then, in the end, that you're saying the jury has to be specifically told that that's what it's doing? You're saying if the necessary part of a constitutional system for the jury to be instructed, that it has the responsibility to find the aggravating factor that serves as a precondition to death? At a minimum, if, in fact, the jury is performing that function, it cannot, at least in a capital case, be told that it is not performing that function, that its advice is — that its verdict is only advisory. But the judge is — Alito What if it's told that it has to decide on life or death, but the judge is — if you decide on death, the judge is going to review it, and the judge has the power to sentence to life? If the — I mean, there's no constitutional violation — our view, and this, again, is Justice Breyer's Eighth Amendment point, which we endorse, our view is that capital sentencing always has been and as a matter of constitutional law should be done by a jury. We're not arguing that other sentences have to be jury sentencing. And so if a jury says it's death, and the judge says, well, I disagree, I'm only going to sentence him to life, there's no constitutional violation. Alito Well, I'm trying to understand the limits of your argument that what was — what is done under the Florida statute diminishes the jury's sense of responsibility. The jury's sense of responsibility will be diminished to some degree if they know that their verdict is not necessarily the final word. Well, that be the case — isn't that the case, whether they're told, well, I'm going to sentence you, you make a recommendation, and the judge decides, or you impose a sentence, but the judge can impose a different sentence, a lesser sentence, there's still — they still don't have to bear the responsibility of making the absolutely final decision. Waxman So, Justice — Justice Alito, let me separate out what I'm calling the selection decision, that is, life or death, and the weighing of ags and mits, and the eligibility decision, which is all of the elements of capital murder have been found by a — beyond a reasonable doubt by the jury with either unanimously or a sufficient majority, and therefore, when the sentencing jury is done, you are eligible for the death penalty. Leaving aside the Eighth Amendment question, whether the Constitution then requires the jury to make the intensely moral judgment about whether the penalty should be life without parole or death, assuming that a judge can do that, so long as the jury is not told that its input, which is how the Florida Supreme Court has put it, is — so long as they are not told that its advisory, so long as they are told that you, as the finders of fact, have to find that beyond a reasonable doubt that this capital crime was committed, which includes the following elements, including one of the two specified aggravators, the Constitution is satisfied. The — the Caldwell problem is an Eighth Amendment problem. Caldwell was an Eighth Amendment case. And in Caldwell, what — I mean, what the jury is told here, if the system exists as the State posits it, what the jury is told here is far more misleading than what was told in Caldwell. In Caldwell, the jury was simply told at closing argument that your decision is going to be reviewable by the Mississippi Supreme Court. And a majority of this Court held that that unconstitutionally diminished the jury's responsibility. Here, the jury was told over and over and over again, and consistent with Florida law, that your judgment is merely advisory. I will be the one to make this determination. And either, if that isn't — that does appear to be the system, that violates Ring. If it isn't the system, and if somehow it can be argued that the jury is making implicit findings of aggravation writ large that renders somebody eligible for death, then there is a plain Caldwell problem. And that's our position. May I reserve the balance of my time? Roberts. You may. Thank you. Mr. Windsor. Mr. Chief Justice, and may it please the Court. Florida's capital sentencing system was constitutional before Ring v. Arizona, and it remains constitutional in light of Ring v. Arizona. What Ring required was a jury determination on those facts on which the State legislature conditions the imposition of the death penalty. In this instance, Mr. Hurst got that. The legislature has determined that the elements necessary to make a defendant eligible for the death penalty is the existence of a murder and one or more aggravating circumstances. And what the other side calls the advisory sentence included within it a finding, as this Court recognized in the United States v. Jones, that the jury had determined there was one or more aggravating circumstances. And so the jury — Sotomayor, how is that, when Florida law says that the judge has to find an aggravator to make someone eligible for the death penalty? Well, I agree with the other side that there's a difference between the Senate's selection and the Senate's eligibility. And so once the defendant is eligible because a jury has found all the necessary elements, then what happens after that, Your Honor, does not implicate Ring at all. Could you tell me how this is different than Arizona? I mean, in terms of the system, just like in the Arizona case, there had been precedent by this Court that Arizona law had been constitutional. Unlike Arizona, every Florida — every court that has looked — every judge who has looked at it, not one of them has said that they believe, personally, it's constitutional. Even the courts affirming — affirm on the basis of the prior precedent, and you have a little less than half the court directly saying it violates Ring. So what's the jury finding when it says 7 to 5? Well, if I could back up. Even when it says a murder has been committed, felony murder wasn't. Felony murder was charged, but we don't know if they found a robbery, right? We — at the guilt phase, they convicted of first-degree murder, which could have either been felony murder with the predicate underlying felony being robbery or premeditated murder. But to answer your earlier question about the actual — Sotomayor, so how do we know which one they picked? I'm sorry? How do we know which one they picked? Which makes them eligible for the death penalty? Well, our position is that they — that he became eligible at the — at the sentencing phase when the jury made its advisory decision, because the jury at that phase was instructed that if you determine no aggravating circumstances are found to exist, you must recommend life. But you do agree that that — it doesn't require a unanimous jury. It does not require a unanimous jury. And a simple majority is all you need. That's right. So we don't have a unanimous jury, even a functionally equivalent unanimous jury, finding those aggravators. I'm sorry? We don't have a unanimous or functionally unanimous jury finding those aggravators. Our reliance for the final eligibility determination is that 7 to 5. But I would make this point. The 7 to 5, there are two things that go on when the jury determines whether someone should be sentenced to death or not. First, the jury looks and determines whether the State has proven beyond a reasonable doubt an aggravating circumstance. That's the eligibility piece of it. Then they get into the sentence selection process, where they weigh the aggravators that they do find, assuming they find some, against the mitigating circumstances. And of course, the defendant under this Court's precedent is allowed to put in any evidence that he wishes. I'm sorry. The jury is not asked to find an aggravator. I'm sorry? It's not asked to find an aggravator. It is, Your Honor. It is instructed that it may not return a death recommendation without. No, no, but that's not found at the jury verdict. I'm sorry? It's not found at the trial after. At the sentencing phase. You're only at the sentencing. I'm talking about the sentencing phase, right. Suppose that the jury comes back at the sentencing phase and says, we recommend life. Yes. And the reason, though I guess no one would know it, is because nobody found an aggravator. Can the judge nonetheless give death? No. Not unless, with this caveat. They have a page in their opinion, in the brief, you know, page 20, where it cites about six Florida cases, which suggested to me that they thought the answer to that question as a matter of Florida law was, yes, the judge can sentence to death. Is that so or not so? Let me be clear. As a matter of Florida statutory law, it is permitted. We acknowledge that under Ring it would not be permitted in the circumstance where the State is relying on the recommendation to satisfy the eligibility. Now, you could have a situation where the jury comes back, they say, life, and we know through mental telepathy, though I guess the judge doesn't, that the reason that they did that is no one found an aggravator. My simple question is, as a matter of Florida law, can the judge impose the death sentence, yes or no? As a matter of Florida statutory law, yes. As a matter of Ring, no. With this caveat. Breyer. That isn't Florida. I mean, it is. It's Federal law. So, I mean, Ring is over. So you say the answer is now no. With this caveat, Justice Breyer. As of Ring. Because you agree that this case is like Ring, and therefore Ring would apply, and therefore the Fed not this case, but any case in which they recommend life. Not any case, Your Honor. God, I'd like to know your caveat. What is your caveat? I'm on pins and needles here. The caveat is this. I am too, actually. Sorry. There are multiple ways that a defendant in Florida can become eligible for death. One is in this case where it's determined at the sentencing phase because of the finding within the jury's recommendation. In other instances, it can be — a person can become eligible before the sentencing phase, either because they have a prior violent felony conviction or because they have a contemporaneous conviction. For example, if someone murdered two people and were convicted of double murder, that person at the guilt phase, by virtue of that guilt jury's verdict, has been found to be eligible for the death penalty. And so at that stage, then in your hypothetical, Justice Breyer, if that sentencing phase jury recommended life, the judge could overwrite it without violating Ring. Now, I will tell you that as a matter of Florida State law, the judge in that circumstance would face an exacting standard, and as a matter of fact, no judge has overridden a jury's life recommendation since before Ring. So as a matter of function, this is just not something that happens in Florida. But to answer your question, we do believe it would be constitutional in the situation that I described. Ginsburg. But the jury came in hung. I'm sorry? On the sentence. If the sentencing phase — If the jury, instead of being 7 to 5, it was hung. If the — Could the judge then impose the death penalty? Not in this situation, Your Honor, because that would result in a life recommendation. A 6-6 vote is tantamount to a life recommendation. And the judge could not override that if he were relying on the jury sentencing finding to satisfy Ring. And even if he weren't, he or she weren't, like I said, it's an exacting Florida State law standard. The judge would be reversed for overturning that unless he or she determined or unless the appellate court determined that no reasonable jury in those circumstances could have imposed or recommended a life sentence. And as I indicated, it's been since 1999 since any judge actually overrode a life recommendation. Just so I understand it, so you're saying that it is possible that under Florida law, the jury would not find the existence of an aggravating factor and would — and there are different ways that this would come out. The hypothetical was a hung jury. But the judge could then proceed to find an aggravating factor and impose the death penalty. Now, you say, well, no, this hasn't happened, he'd probably be reversed. But theoretically, this could happen. Only — that could not happen consistent with Ring, Your Honor, unless there were some other jury finding or admission that established death eligibility. Kagan. Well, you're saying it couldn't happen consistent with Ring, meaning that there are certain applications of the Florida law that would be unconstitutional, even in your view. That hypothetical that we've explored here, again, with the absence of another aggravating circumstance proven outside, and that actually happens in most cases, Justice Kagan. But we don't sit in judgment of the theoretical scheme that Florida has set up, do we? No, Your Honor. Don't we have to adjudge that there has been unconstitutionality in this case? That's correct, Justice Scalia. And in this case, there was a jury recommendation, actually two jury recommendations  Kagan. Can I give you another hypothetical scheme, notwithstanding that we don't sit in judgment of hypothetical schemes? Sure. Suppose that the jury finds an aggravating fact, but then, you know, the judge has this whole separate hearing, right, in which other things are presented to him. And the judge says, you know, I don't actually agree with the aggravating fact that the jury found, but I have my own aggravating facts, and now I'm doing all the weighing, and I come out in favor of death. I assume that you would say that also would be an unconstitutional application. No, Your Honor. That would be consistent with Ring, because, again, once death eligibility and there's a substantial difference that this Court has recognized over the years between the determination of who's eligible for death, and then of that universe of people eligible for death, for whom is it appropriate? Yes, quite right. But I'm hypothesizing a case in which the jury finds that death eligibility marker, right? Right. But the judge throws that one out and substitutes his own. That you think that would be constitutional? Well, the judge in that instance wouldn't be throwing it out. No, he does throw it out. He just says, I don't agree with that. I'm – but I'm substituting my own. Would that be all right? That would be okay, because eligibility would have been determined, just like if in my double murder example, the judge believed that, you know, if he were sitting on the jury, maybe he would have acquitted that person of the double murder. And, of course, he can't just override the jury's verdict based on a mere disagreement. In that instance, the death eligibility was determined, notwithstanding that he had been the decisionmaker, maybe he would have decided differently. The person is eligible for death, and then it's up to the senator. But, Scott, I have to say that answer surprises me, because the death sentence there is not at all a function of the jury's eligibility finding. The judge has tossed out that eligibility finding and substituted his own, which then leads to the death sentence. So how can we say that that's possibly constitutional under Wren? Because the point in Wren was to make sure that no person was subject to a greater penalty than they bargained for when they did the crime without a jury finding. And in your hypothetical, the jury finds that there is an aggravator. So there is a jury finding that that person is entitled to the punishment based on the crime that he or she committed. But the judge has said that that jury finding is utterly irrelevant to his decision about whether to impose death, that he is imposing death based on something that the jury has not found. But at that point, the judge's determination is separate from the selection point. The judge is exercising the discretion to sentence within a person who is determined by a jury to be eligible for the death penalty. He can't. That didn't happen here, did it? No, Your Honor. Well, the thing is, you can't really tell whether that happens in a wide variety of cases. And this is actually, this goes to this question of because the jury doesn't actually have to find specific things, only the judge has to find specific things, you often are not going to be able to tell whether the judge's sentence is based on the same aggravating facts that the jury has found. But it doesn't need to be under Wren, because once the jury has determined that there's an aggravating factor, or if it's been admitted, then the person is death-eligible and Wren is completely finished. There's nothing more to do under Wren, and then we move into the next case. Ginsburg. Even though the jury is told, now, whatever you say, it's advisory, it's not binding. So you have made a finding of an aggravator, but it's not a binding finder of an aggravator. The jury is told that whatever they say is advisory. Doesn't that make a difference? Now, what the jury is told is that its ultimate recommendation is not binding on the Court, and that's true. And that's one of the great benefits of Florida's system. I mean, Florida's system was developed in response to this Court's decision in Furman, and this Court has said that Florida's system provides additional benefits to the defendants. So you have a judicial backstop, no matter what. That was before Wren. That was before Wren, and we're not contesting that Wren would require a jury finding or admission of those elements. But once the jury makes its recommendation, even if it recommends death, the judge can override that by, for any reason, just based on disagreement alone, which makes it unlike, you know, in a usual capital or, excuse me, in a usual criminal proceeding where the judge could not overcome the judge. Sotomayor, I just want to, I'm sorry, Justice Kagan. Scalia, is it clear to the jury that they are the last word on whether an aggravator exists or not? What the jury is told is that they cannot return a death recommendation without finding an aggravating circumstance. And that's correct. But then they're also told that the judge is ultimately going to decide whether your recommendation stands or not. The judge is going to ultimately impose the sentence, and that's true. And that's both true under Caldwell. But shouldn't it be clear to the jury that their determination of whether an aggravator exists or not is final? Shouldn't that be clear? Well, I don't think so, Your Honor, because the determination of the aggravator doesn't yield a death sentence unless the judge, in his or her own opinion, believes that death is a personal benefit. I'm talking about what responsibility the jury feels. If the jury knows that if we don't find an aggravator, it can't be found, or if we do find an aggravator, it must be accepted, that's a lot more responsibility than just, you know, well, you know, if you find an aggravator and you weigh it and provide for the death penalty, the judge is going to review it anyway. I'm not sure that's an accurate characterization of what goes on, because it's not that the judge must accept the aggravator. The aggravator determination has no purpose or no point other than determining eligibility and then the weighing. And if the judge determines that the death sentence is not appropriate, for whatever reason, then the fact that the jury found an aggravating circumstance makes no difference. Kennedy, I suppose in your earlier hypothetical, the judge, the jury finds an aggravator that occurred in the course of the robbery, and therefore, there's death eligibility. Then it goes to the judge, and the judge says there's simply no evidence to support that aggravating factor, but I find another aggravating factor. Under your view, the judge could go ahead and impose a death penalty? Well, in that instance, that's a little bit different, as I understand it, than Justice Kagan's hypothetical. First of all, the recommendation doesn't specify what the aggravating factor is. But this is my hypothetical. Okay. So to make sure I understand it. Which honestly seems like the same. Well, I think that the difference is, respectfully, has included the fact, the finding that the judge finds no evidence to support, as opposed to just disagreeing with their, excuse me. And what would happen? If you had a situation, and again, this would be limited, let me make sure I'm limiting the answer to the situation where the State is depending on the death recommendation for the finding of an aggravator, which is the minority of cases, as we've said in the brief. If the jury made a specific finding as to a specific aggravator, and again, they wouldn't be instructed on that aggravator unless there was sufficient evidence of it at the threshold stage. But if the judge concluded that there was insufficient evidence, again, he never would have submitted to the jury, then that probably would not be permissive. Breyer, if I may interject. Roberts, for a second, to an analogy. I'm sorry? There are two good analogies in other areas of the law. The one that supports you is robbery, force or threat of force. Right. No one ever asks, or needn't ask, whether six members of the jury thought there was a threat but no actual, or seven members thought there was actual but no threat. Threat or threat of force. I don't think they have to say. I don't think so. So that supports you. On the other hand, imagine a normal sentencing case. The statute says you get aggravated punishment if you had 50 grams of cocaine. The jury finds he had 50 grams of cocaine. No, sorry. The statute says aggravated sentence if 50 grams of cocaine or meth. The jury finds he had 50 grams of cocaine. I don't think, under Apprendi, which I didn't agree with, but I don't think the judge could say, I'm going to give you the aggravated sentence because I don't believe there was any cocaine, but I do believe there was meth. That may very well be right, and that's one of the reasons the jury is not asked to find specific aggravatings. But we do know that the judge here, now, still, you're having conceded ring where the jury says no aggravating factor. We know that the jury can, if the jury finds aggravating factor X, have death on a completely different aggravating factor that the jury never thought of, namely Y. Now, we know that, and now compare that to the hypothetical of cocaine and meth, and then we have Apprendi, which I disagree with still. But I think, Your Honor, in the cocaine and meth example, I believe that the Court would look, as they did in Jones, and say, well, is the legislature setting this up as distinct offenses, or are they setting this up as one offense that can be satisfied either by possession of cocaine or meth? And if it were the latter, then the jury would just be instructed to find one or the other without any specific concern. And we know as a jury that the jury would find one or the other without any specific concern. Sotomayor, is there an element of the crime that makes you eligible for the death penalty by a unanimous or functionally equivalent unanimous jury? We do, Your Honor. And let me say with the What do you do with the statement in our case law that says a simple majority is not a unanimous jury? Well, we don't say that it's a unanimous jury. Let me step back and say that the 7-to-5 vote, by the way, is not necessarily 5 votes that there was no aggravating circumstance, because, again, there's two things that go on in the jury room. One, they decide whether there were aggravating circumstances, and two, they do the play. Sotomayor, and they don't agree with which one? So we don't know whether it was premeditation or robbery. It could be 4-to-3 or 2-to-5. It could be anything. Well, I'm talking about in the jury, in the sentencing phase now. Right. So a 7-to-5 could well mean that all 12 jurors found a robbery and all 12 jurors found heinous and vicious and cruel. And in fact, the 7-to-5 tells us that at a minimum, a majority of the jury, at a minimum, found beyond reasonable doubt that the State had proven the existence of one or more aggravating circumstances. And getting back to Justice Sotomayor's point about the cocaine and the meth, the And we know as a matter of Florida State law that the element at issue here, to take someone who is not eligible for the death penalty and to make him or her eligible for the death penalty, is the existence of one or more aggravating circumstances, not a specific one. And so it is like Schad v. Arizona, where you can't say whether the jury agreed that there was premeditation or whether there was felony murder. And in fact, that was the case at this defendant's guilt phase back in 1998. He was convicted of first-degree murder, and the guilt phase jury was instructed that they could return that verdict either by finding premeditation or by finding felony murder. And there was no jury finding as to which one it was. And so as a matter of, I think to answer your question about whether they all need to be the same or not, it would depend on what the state legislation. Sotomayor's Would you believe that a simple majority is a jury unanimously or functionally unanimously finding that element beyond reasonable doubt? Well, we are certainly finding it beyond reasonable doubt. We are relying on the court's decision in Appadaka, but also That was 10-2. I'm sorry? Does 10-2 automatically mean that 7-5 is okay? Not automatically, Your Honor. But I think if you look at Appadaka, what they were rejecting was the same arguments that the Petitioner is asking this Court to accept, which is that this long history of the unanimity in the 12-person jury necessarily means it's brought into our system. But I'll say this, too. The 7-5 is not the same kind of jury verdict that you'd have at a guilt phase because of this judicial backstop, because of the other protections that Florida has put in place. And so even if it's a 7-5 vote, you still have the judge coming behind that jury, who unlike at the guilt phase where he must accept the jury's findings unless they are not supported by evidence, he or she can disagree for any reason, he or she can give mercy for any reason, and that happens a lot. And so we cited some cases in our brief where a man was convicted of murder and a horrible sexual assault, and by virtue of those two convictions was necessarily eligible for the death penalty. The jury heard all of the evidence, made a recommendation that he receive the death penalty, and the judge said, no, I'm going to sentence him to life. And so this Court, you know, this gets back into the jury versus judge sentencing, but there are some real benefits associated with judicial sentencing. And if you go back to Profitt, when this Court first upheld Florida's capital sentencing system, it recognized the advantages of judicial sentencing, because you're not going to have someone's life or death being determined exclusively on the, perhaps the emotions of a jury. Justice Kagan. Kagan Can I go back to the kinds of hypotheticals that Justice Kennedy and I were proposing? So let's say that there is a jury and it's been presented with evidence that the murder was for pecuniary gain, which is one of the aggravating factors. And the jury comes out with a recommendation of death, so you and that was the only thing that was presented to it, so you know that the jury has made a death eligibility determination on pecuniary gain. Then it goes to the judge. The judge says, you know what, I don't really think that there's enough evidence of pecuniary gain, but I've had this whole hearing and I find that the thing was, that the crime was heinous and whatnot, and now I'm going to sentence the person to death. Now, you say that that's fine, is that right? Well, let me, let me, I realize it's a hypothetical, but let me tell you why that couldn't happen in Florida. A judge would not instruct a jury on an aggravating circumstance for which there was not sufficient evidence to find that. And so your hypothetical would not happen if there weren't, there are 16. Well, you know, no, he has, well, he's heard more evidence because, you know, there's a whole new hearing that he has, and now he's considered it more thoroughly, and he thinks, no, I don't agree with that anymore, but I think it was heinous. So that would be fine. Again, that's not this case because there was no additional evidence. Yeah, yeah, yeah. It's not this case. But the, if the judge found that the, that there was no evidence of any aggravating circumstances. I'm throwing out the jury's aggravating factor, but I'm substituting my own. I thought that that was what you told me, that that was constitutional under Ring. Well, I think it depends on why you're throwing it out. If there's, if, as with any jury finding, if a judge finds at the guilt phase that there's insufficient evidence to find any element, then he would not rely on the jury's determination there. This wasn't at the guilt phase. This is just as a matter of sentencing. Let me get on to my question, because I think you answered this one already. Then the appeal that's taken, right, the appeal is focusing now only on what the judge has found. Isn't that right, under Florida law? The appeal, if the person came in and said that there was insufficient evidence, the appeal would only be as to the judge's findings and not at all to the jury's. Well, the, if I understand the hypothetical correctly, someone's convicted, has a death recommendation, a death sentence, and is appealing to the Florida Supreme Court. And he says there was just not enough evidence of all these aggravating factors. So, but that was, would only be as to the judge's aggravating factors. It couldn't possibly be that he would challenge the jury's. Well, the judge's aggravating factors would be detailed in a written order. But if there were, if you were over. Kagan I mean, I'm just suggesting that the whole appeal process suggests that the crucial death eligibility determination is being made by the judge, because that's the only death eligibility determination that the appeals court is ever going to review. Well, I think that gets to another benefit of Florida's system, is that they do have this to review. You know, there's been some suggestion of jury sentencing as a. Kagan Yes, look, they have something to review. The problem is it's the judge's thing that they're reviewing, not the jury's. And that's a Sixth Amendment problem. I don't think it's a Sixth Amendment problem, any more than here when, at the, at the, at the guilt phase when he appealed and there was a examination of the evidence, they didn't know whether the jury found on felony murder predicate or on first-degree murder. They're reviewing the conviction and they're reviewing the evidence that sustains it. Or that may sustain it. Sotomayor How about if that's jury? Roberts To what degree is there a real dispute here about the presence of the two aggravating factors? Kagan There is none, Justice Alito, in my view, and I know that there was some argument a moment ago about the, about the evidence suggesting that someone else may have committed the crime. We cited in our brief from their initial brief in the Florida Supreme Court where they said, without any contention, this is a two-aggravator case. Hearst does not challenge the trial court's findings that the murder was committed during the course of a robbery, and it was especially heinous, atrocious, or cruel. He doesn't question the seriousness of those aggravators, either. His focus instead, acknowledging all that, was on proportionality review, which is not at issue here, but which, by the way, is another benefit of Florida's system, that the Florida Supreme Court reviews everything for proportionality.  Can I ask you two separate questions on this? Roberts Yes. Sotomayor Number one, whenever have we said that a jury waiver on an issue is based on the lack of a challenge by a defense attorney? Don't we require waivers of jury trials to be explicit and by the defendant, him or herself? Hearst When someone is waiving the jury trial altogether, absolutely, and of course that would be structural error even if there were no objection. But this is goes to more like the element of offense, and the court held in Washington v. Requenco that the apprendee error is subject to harmless error. Sotomayor So where have we ever said that not challenging something is an admission  Hearst Well, no. Sotomayor We take plenty of appeals where people are saying, assuming this state of facts, I'm entitled to X. And then when they go back down, they argue that that assumption is wrong. Why isn't this the same? Hearst Well, we've cited other portions where they had, excuse me, acknowledged that below back in the sentencing memorandum, the first go-round. But to follow up on your question, Justice Alito, about whether there's an existence of a doubt, the Florida Supreme Court found that both of these clearly existed at the post-conviction opinion, which led to the resentencing that's now on appeal here. They sent it back for resentencing not because of anything having to do with death eligibility or the establishment of aggravators. They sent it back because there was insufficient effort to produce mitigating evidence. Sotomayor Has there ever been an appeal in Florida where an advisory jury was given not given a proper instruction and a resentence was ordered for that reason? Hearst Has there been a Florida Supreme Court reversing a death sentence for an improper instruction to the advisory jury? I'd be surprised if there weren't, Your Honor, but I don't know. I'll look at that. Getting back to the admission, the evidence was clear. There's no question that there was a robbery here. There's no question that there was that this was heinous, atrocious, and cruel. And we would ask that the Court affirm the Florida Supreme Court's judgment. Roberts Thank you, counsel. Mr. Waxman, 6 minutes. Waxman Notwithstanding this flurry of papers, I'm aspiring not to use the 6 minutes. Let me first go right to Justice Scalia's question, which is not a hypothetical, although I'm happy to answer hypotheticals. Your question was, was the jury told, and doesn't a jury have to be told, that as to death eligibility, the element of the crime of capital murder, that it makes the decision? The answer is, it does have to be told that. It certainly can't be told the opposite, and it absolutely was not told that. It was told over and over again, consistent with the statute, that its decision was purely advisory. And I want to refer the Court to the Florida Supreme Court's decision in State v. Steele, which is at 921 Southern. The Florida Supreme Court in Steele said, first of all, nothing in the statute, the standard jury instructions, or the standard verdict form, requires a majority of the jury to agree on which aggravating circumstances exist. Under current law, the jury may recommend a sentence of death where four jurors believe only that one aggravator applies, while three others believe that only another aggravator applies, because seven jurors believe that at least one aggravator applies. Florida goes beyond that. It is unlawful, the Supreme Court of Florida has said, to require, to ask the jury, the sentencing jury, to provide a special verdict that in any way indicates what their, quote, input is on the sentencing factors. Again, Steele at page 546. Specific jury findings on aggravators without guidance about their effect on the imposition of a sentence could unduly influence the trial judge's own determination of how to sentence the defendant. The trial court alone must make detailed findings about the existence and weight of aggravating circumstances. Kennedy, is that a post-Ring? What's the date of it? Waxman, Yes. This is post-Ring. The court also held that Ring didn't apply. It has no jury findings on which to rely. And in fact, the court also explained in, later in the decision, in the same decision and also in its decision in Franklin, that Florida, quote, Florida bars a special verdict precisely because requiring specific jury findings on aggravators without guidance about their effect would harm the jury's independent, the trial court's independent determination. Now, counsel, my colleague on the other side here says that, well, there would not be a statutory problem, but there would be a Ring problem if we knew that the jury found that no aggravators existed. So how can Ring be satisfied when we have no earthly idea what aggravators are and what the jury found? It could be, as in this case, as Steele acknowledges, 3 for one and 4 for the other. As to the, I think, hypothetical question that Justice Kagan was asking, so, you know, in a circumstance, how much leeway does the judge have to make his own, his or her own decisions on the death penalty? The Florida Supreme Court has specifically allowed the death penalty to be imposed and a determination of death eligibility to be made based on evidence that was never presented to the sentencing jury and based on an aggravating factor on which the sentencing jury was not applied. And the notion that there hasn't been a life override since Ring is an interesting fact, but this Court, in this Court's Spaziano decision and this Court's Daubert decision, that's exactly what happened. The jury said, we want life. The judge said, I'm hearing independent evidence and you're getting death. Now, as to the supposed concessions in this case, I think I'll rely largely on our brief, but the notion that somebody, that the lawyer said this is a two-aggravator case is certainly true. There were two aggravators charged, and maybe the jury, we know that the trial judge found that two aggravators were satisfied. This defendant has been making the Ring argument since before Ring was decided. He raised this as an apprendee issue at the very first trial. He asked for a bill of particulars for the State to indicate which aggravators it was going to rely on, and he was denied on the grounds that apprendee doesn't apply. Even the, again, the central Ring problem in this case, the central Sixth Amendment problem in this case, leaving aside the indeterminacy of 7 to 5, and maybe it's 3 for one and 4 for the other, is that when a Florida sentencing jury finishes its work, there is simply no question. The defendant is not eligible for the death penalty. Only the trial judge can do that. Thank you. Thank you, counsel. The case is submitted.